UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>           Plaintiff,<br>    v.<br>ALLEN GESSEN,<br>           Defendant. | Case No. 22-cr-00276-JSC-1<br><br>**ORDER FOLLOWING APRIL 26, 2023 PRETRIAL CONFERENCE**<br><br>Re: Dkt. Nos. 34, 36, 37 |

Following the April 26, 2023 pretrial conference, the Court rules on pretrial motions below. All rulings are subject to renewal and reconsideration based on how the evidence develops at trial, including a party or witness opening the door.

**I.  GOVERNMENT'S MOTION RE: UNDERCOVER EMPLOYEE TESTIMONY**

The Government's motion regarding trial testimony by two FBI undercover employees ("UCEs") is GRANTED in part and DENIED in part. (Dkt. No. 34.)

The requests to allow UCE-1 and UCE-2 to testify under pseudonyms, to prevent questioning as to their true identities, and to redact their faces on photographs admitted into evidence are GRANTED. They do not amount to a courtroom closure and the Government has made an adequate showing why they are necessary to protect the UCEs and ongoing investigations, (Dkt. No. 35-2). *See Waller v. Georgia*, 467 U.S. 39, 45 (1984). The Government shall provide the UCEs' pseudonyms to Defendant and the Court by **5:00 p.m. on April 27, 2023**.

The request to prohibit digital devices and sketch materials from the courtroom is DENIED, but the Court will make an announcement each day about the prohibition on recording and will instruct court security officers to watch for recording during the UCEs' testimony.

As directed at the pretrial conference, the Government made an *in camera* submission to

support its request to withhold the UCEs' true names from Defendant. The Government has established that disclosing the UCEs' names would threaten their safety and ongoing investigations. *See United States v. Kwok Cheung Chow*, 772 F. App'x 429, 431 (9th Cir. 2019) (unpublished) ("[T]he undercover FBI agents' identities are classified, and the government has put forward evidence (which we reviewed in camera) strongly suggesting that disclosure of the agents' identities would threaten their safety. Balancing this concern against Chow's interest in discovering the agents' identities, we hold that the district court did not abuse its discretion by ordering the agents' identities withheld.") (citing *United States v. Gil*, 58 F.3d 1414, 1421 (9th Cir. 1995)).

The request for a physical screen to prevent the public (but not Defendant, counsel, the Court, or the jury) from seeing UCE-2 testify is DENIED. A screen may prejudice Defendant in front of the jury by (1) implying that he and those who are attending his trial are dangerous and (2) inflating the importance of UCE-2's testimony relative to other witnesses. *See Ayala v. Speckard*, 131 F.3d 62, 71-72 (2d Cir. 1997). Defendant has a Sixth Amendment right to a public trial and the public has a First Amendment right to attend criminal trials. *United States v. Allen*, 34 F.4th 789, 793-94 (9th Cir. 2022); *see Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980). Defendant offered a partial closure as an alternative to a screen and, in this regard, unequivocally waived his right to a public trial at the pretrial conference. *See Allen*, 34 F.4th at 797 ("A partial closure means the court has excluded only a limited number of persons from the courtroom, either for the duration of the proceeding or for a limited period of time (such as during one witness's testimony)."). The Government has established a "substantial interest" in protecting UCE-2's physical safety as well as the integrity of ongoing investigations. *Id.*; *see Ayala*, 131 F.3d at 72 ("The gravity of the state interest in protecting the secrecy of the officer's identity from casual observers and the likelihood that this interest will be prejudiced by the officer's testifying in open court are both sufficiently substantial to justify the limited closure of the courtroom during the officer's testimony."). The following partial closure during UCE-2's testimony is "narrowly tailored" to serve that interest. *Allen*, 34 F.4th at 797; *see id.* ("Courts must sua sponte consider possible alternatives to a closure even when they are not offered by the parties." (cleaned up)).

2

- The Court will announce the partial closure outside the presence of the jury.
- The public may watch live video (with audio) of UCE-2's testimony from Courtroom 7, with the camera angled down to obscure his face. *See Chow*, 772 F. App'x at 431–32 ("The government had a substantial reason for preventing public disclosure of the undercover agents' identities . . . , and the district court's partial courtroom closure during their testimony was narrowly tailored to serve that substantial interest, while preserving the public's right of access to the trial by viewing a live video of the agents' testimony (with their faces obscured) from another room.").
- Defendant's mother; criminal defense counsel for Defendant's alleged associates Aleksei Kiselev and Vladyslav Polyanskyy; and employees of the Federal Public Defender and U.S. Attorney's Office are permitted in the courtroom.

## II. OTHER ACTS EVIDENCE

The Government's motion in limine No. 1 and Defendant's motion in limine No. 1 are GRANTED in part and DENIED in part, (Dkt. Nos. 36, 37), as follows:

*Drug Use.* Evidence of drug use by Defendant or P.C. is excluded as irrelevant and prejudicial. *See* Fed. R. Evid. 403, 404(b)(1).

*Physical and Emotional Abuse.* This evidence is excluded because the Government has not established its relevance other than for the improper purpose of propensity. *See* Fed. R. Evid. 404(b)(1).

*Defendant Taking Son to Dubai in 2018.* This evidence is excluded as improper propensity evidence. *See* Fed. R. Evid. 404(b)(1). It is not admissible to prove motive or intent with respect to the custody dispute that allegedly motivated Defendant to have P.C. murdered. *See* Fed. R. Evid. 404(b)(2). This incident took place four years before the charged conduct and has an insufficient nexus to Defendant's alleged desire to get sole custody of his son and prevent him from seeing his mother, P.C. It is not clear why P.C. would not have been able to travel to Dubai.

*Defendant Taking Son to U.S. in 2019.* This evidence is allowed to prove motive or intent with respect to Defendant and P.C.'s custody dispute. *See* Fed. R. Evid. 404(b)(2). The proffered

3

evidence is that while Defendant and P.C. lived in Russia, Defendant (a U.S. citizen) took their son to the U.S. knowing P.C. could not follow them to the U.S. because of visa issues. That is relevant to Defendant's alleged desire to get sole custody to the exclusion of P.C.; that is, to separate his son from his mother.

*Defendant Taking Son to Canada in 2021.* This evidence, including the resulting parental kidnapping charge against Defendant in Massachusetts, is allowed because it is "inextricably intertwined" with the charged conduct and necessary "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002). The proffered evidence is that in a recorded conversation with UCE-2, Defendant specifically referred to the Canada trip, parental kidnapping charge, and related incarceration as part of his motivation to have P.C. deported or murdered.

*IRS Bribery Scheme.* The proffered evidence is that Mr. Kiselev introduced Defendant to UCE-1 and Defendant met with UCE-1 in May 2021 to discuss a scheme involving bribing an Internal Revenue Service ("IRS") official. This propensity evidence is neither inextricably intertwined with the charged conduct nor admissible to prove motive or intent; it has nothing to do with P.C. *See* Fed. R. Evid. 404(b)(2); *Beckman*, 298 F.3d at 794. (General evidence of how Defendant was introduced to UCE-1 and UCE-2, without reference to IRS bribery, is allowed as inextricably intertwined.) However, because Defendant has preliminarily requested a jury instruction on entrapment, (*see* Dkt. No. 48 at 36), he is at least preliminarily contending he was entrapped by a government agent. If he so contends, then "[t]he government has the burden of proving beyond a reasonable doubt that the defendant was not entrapped" because either he was predisposed to commit the crime or he was not induced to commit the crime. Ninth Circuit Model Criminal Jury Instruction 5.2 (2022); *see United States v. Gurolla*, 333 F.3d 944, 951 (9th Cir. 2003) ("Only slight evidence will create the factual issue necessary to get the defense to the jury, even though the evidence is weak, insufficient, inconsistent, or of doubtful credibility." (cleaned up)). Evidence of the IRS bribery scheme may establish Defendant's "character and reputation," which the jury may consider in determining whether Defendant was predisposed to commit the charged crime. Ninth Circuit Model Criminal Jury Instruction 5.2 (2022); *see United States v.*

1  *Jones*, 231 F.3d 508, 518-19 (9th Cir. 2000).  Accordingly, unless and until Defendant indicates he
2  is not asserting the defense of entrapment, this evidence is allowed.
3          *Estonian Factory Money Laundering Scheme.*  This evidence is allowed to permit a
4  coherent and comprehensible story.  *See Beckman*, 298 F.3d at 794.  The proffer is that in recorded
5  conversations on June 2 and 22, 2022, Defendant and UCE-2 discussed a scheme to launder
6  money through an Estonian factory project alongside a scheme to have P.C. deported or murdered.
7  The conversations move from one scheme to the other, making this evidence necessary for the jury
8  to understand the charged conduct.

### III. GOVERNMENT'S OTHER MOTIONS IN LIMINE

The Government's motions in limine Nos. 2, 3, 4, 5, and 6 are GRANTED as a general matter; either side may make specific objections at trial.  (Dkt. No. 36.)  The Government may have two case agents at counsel table throughout trial, and they are not required to testify before other witnesses.  Defendant may have defense investigator Michael Portman at counsel table throughout trial.

### IV. DEFENDANT'S OTHER MOTIONS IN LIMINE

As to Defendant's motion in limine No. 2, by **5:00 p.m. on April 27, 2023**, Defendant shall tell the Government which portions of the audio recordings are substantively objectionable (e.g., with regard to drug use) and which portions of the recording transcripts are incorrect.

Defendant's motions in limine Nos. 3 and 4 are GRANTED as a general matter; either side may make specific objections at trial.  (Dkt. No. 37.)

Defendant's motion in limine No. 5 is GRANTED.  However, witnesses will be called only once unless a party makes a showing that something unanticipated happened at trial, necessitating recalling an excused witness.

Defendant's motion in limine No. 6 is GRANTED in part.  Witnesses other than the Government's two case agents and Defendant's investigator shall be excluded from the courtroom and may not read trial transcripts of discuss their testimony except with counsel.

Defendant's motion in limine No. 7 is GRANTED in part.  The Government may not refer to P.C. as a "victim," except in closing argument, and shall remind its witnesses not to do so.

As to Defendant's motion in limine No. 7, the Government shall have the case agent lay a foundation for Exhibit 14 at **8:00 a.m. on May 1, 2023**, outside the presence of the jury.

## V.  TRIAL SCHEDULE

Counsel shall arrive at 8:00 a.m. each day of trial.  The Court expects to seat the jury and hear opening arguments on Monday, May 1, with the first witness called on Tuesday, May 2.  Trial will proceed from 8:30 a.m. to 2:30 or 3:00 p.m. on Monday through Thursday, and from 8:30 a.m. to 1:30 p.m. (with no lunch break) on Friday.  The Court will tell the jury to expect to get the case by Monday, May 8, if not before, but will make sure all jurors would be available through Wednesday, May 10.

By **12:00 p.m. on April 28, 2023**, the parties shall submit a stipulation listing potential jurors, if any, they agree to excuse for hardship.  The Court proposed jurors numbers 3, 8, and 40.

**IT IS SO ORDERED.**

Dated: April 27, 2023

_____
JACQUELINE SCOTT CORLEY
United States District Judge